IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PETER T. HARRELL,

    Plaintiff,

  vs.

CALIFORNIA HIGHWAY PATROL, et al.,

    Defendants.

No. CIV S-07-1514-MCE-CMK

ORDER

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's complaint (Doc. 1), filed on July 26, 2007.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court is also required to screen complaints brought by litigants who have been granted leave to proceed in forma pauperis. See 28 U.S.C. § 1915(e)(2). Because plaintiff, who is not a prisoner, has been granted leave to proceed in forma pauperis, the court will screen the complaint pursuant to § 1915(e)(2).

///

Under these screening provisions, the court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  BACKGROUND

Plaintiff alleges the California Highway Patrol and three of its officers have violated his First, Fourth, Fifth and Fourteenth Amendment rights. The basis for his claims arise from a traffic stop initiated by Officer Shouse on September 2, 2006, while plaintiff was proceeding southbound on Interstate 5 in Siskiyou County, California. Plaintiff alleges Officer Shouse did not have reasonable suspicion and/or probable cause to initiate the traffic stop, a violation of his Fourth Amendment right against unreasonable searches and seizures, and a violation of his Fifth Amendment rights by failing to advise plaintiff of his Miranda[1] rights. In addition, plaintiff alleges the California Highway Patrol, Officer Roberts, Officer Lopey, and Officer Shouse violated his right to privacy by maintaining a list of vehicles frequently operated

///

---

[1] See Miranda v. Arizona, 384 U.S. 436 (1966).

in northern California which are licensed in Oregon, and retaliated against plaintiff for obtaining a dismissal of a prior citation for violation of the California Vehicle Code.[2]

## II.  DISCUSSION

### A.  Search and Seizure

The Fourth Amendment protects against unreasonable searches and seizures without probable cause.  "This guarantee of protection against unreasonable searches and seizures ... marks the right of privacy as one of the unique values of our civilization and, with few exceptions, stays the hands of the police unless they have a search warrant ... on probable cause supported by oath or affirmation."  McDonald v. United States, 335 U.S. 451, 453 (1948).  "The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures."  United States v. Sharpe, 470 U.S. 675, 682 (1985).  "[T]he central concern of the Fourth Amendment is to protect liberty and privacy from arbitrary and oppressive interference by government officials."  United States v. Ortiz, 422 U.S. 891, 895 (1975).  However, "one's expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy and freedom in one's residence."  United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976).

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment.  Whren v. United States, 517 U.S. 806, 809-10 (1996).  "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."  Id. at 810.  "Under the Fourth Amendment, government officials may conduct an investigatory stop of a vehicle only if they possess 'reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity.'"  United States  v. Twilley, 222 F.3d 1092 (9th Cir. 2000) (quoting

---

[2]  Plaintiff also alleges several state law claims, which this court need not address at this time.

3

1  <u>United States v. Thomas</u>, 211 F.3d 1186, 1189 (9th Cir. 2000)).  Reasonable suspicion, not
2  probable cause, is all that is required under the Fourth Amendment in the context of investigative
3  traffic stops.  See <u>United States v. Lopez-Soto</u>, 205 F.3d 1101, 1105 (9th Cir. 2000).
4  "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and
5  reasonable inferences, form the basis for suspecting that the particular person detained is engaged
6  in criminal activity.'"  <u>Id.</u> (quoting <u>United States v. Michael R.</u>, 90 F.3d 340, 346 (9th Cir. 1996)).

       In the instant case, plaintiff avers that Officer Shouse did not have probable cause to initiate the traffic stop.  As stated above, probable cause is not required under the Fourth Amended to initiate an investigatory traffic stop.  Reasonable suspicion is sufficient.  Based on the facts plaintiff sets forth in the complaint, it appears to the undersigned that Officer Shouse had reasonable suspicion to stop plaintiff's vehicle.  Plaintiff states:

> After stopping Plaintiff's vehicle, Officer Shouse indicated that he had stopped Plaintiff because "vehicles with Oregon plates that are seen around the Hornbrook and Yreka area are put on a list maintained by Officer Roberts," and he then engaged in questing the Plaintiff, indicating he was investigating Plaintiff's travel, school, and living arrangements.  Officer Shouse also questioned Plaintiff concerning a prior citation (issued by Officer Roberts and Officer Chilton of the Yreka CHP office) alleging a violation of California Vehicle Code § 4000(a).  This citation had been dismissed by the Court.

(Complaint at 3.)

       However, in an apparently contradictory allegation, plaintiff also states:

> In this case, the stop of Plaintiff's vehicle was without a warrant, and absent any indicia that a crime was occurring.  The sole purpose of the stop by the officer was to conduct investigation into circumstances and events far removed from those immediately presaging the stop (i.e. what was Plaintiff doing in the area, what was he doing in school, had he ever resided in Cove Mobile Villa mobile home park in Yreka, was he familiar with several local addresses, etc.)

(Complaint at 8.)

       Finally, also apparently contradictory, plaintiff states:

> Here, after stopping Plaintiff's vehicle without any basis in probable cause to believe Plaintiff was engaged in the commission of a crime, Officer Shouse relied upon information provided over

> the telephone by Officer Roberts and the John Doe defendants at the CHP office in Yreka, and contained in a "list" formulated and maintained by those persons and by the CHP concerning "cars with Oregon plates seen in the vicinity of Hornbrook, Yreka, and Etna" to conclude that the mere presence of Plaintiff's Vehicle in those areas *may have* indicated a liability to pay California registration fees. ¶ What is more, even this information was only verified by the officer *after* the traffic stop at issue, after he had approached the Plaintiff to conduct custodial interrogation as to the outcome of the previous traffic complaint alleging the same violation as that in the citation he eventually issued, and to gather potentially incriminating information from the Plaintiff concerning the offense for which the officer eventually cited Plaintiff ....

(Complaint at 10 (emphasis in original).)

Plaintiff claims that Office Shouse did not have probable cause to initiate the traffic stop. However, as discussed above, probable cause is not necessary to initiate a traffic stop; reasonable suspicion is sufficient. As to reasonable suspicion, plaintiff's statements seem to indicate that Officer Shouse had reasonable suspicion to believe plaintiff was operating his vehicle in violation of California Vehicle Code § 4000(a). Plaintiff states:

> After stopping Plaintiff's vehicle, Officer Shouse indicated that he had stopped Plaintiff because "vehicles with Oregon plates that are seen around the Hornbrook and Yreka area are put on a list maintained by Officer Roberts"

(Complaint at 3.)

Some of plaintiff's allegations appear to indicate Officer Shouse did act on reasonable suspicion. This reasonable suspicion was formed by specific, articulable facts, namely that plaintiff's vehicle was known to the officers at the Yreka office of the California Highway Patrol as one of the vehicles operated frequently in California without being registered in California. According to California state law, it is a misdemeanor for California residents to operate a vehicle in California without it being properly registered in California. See Jones v. Pierce, 199 Cal. App. 3d 736 (1988). Even non-residents must register vehicles in California if the vehicle is based in California or primarily used on California highways. See Cal. Veh. Code §4000.4. Therefore, the fact that Officer Shouse and the other officers at the Yreka CHP were familiar with plaintiff and his vehicle, and knew that the vehicle was operated frequently in

California appears to be sufficient reasonable suspicion to instigate an investigatory traffic stop. Plaintiff's Fourth Amendment rights against unreasonable search and seizure were therefore not violated by the traffic stop initiated by Officer Shouse.[3] However, plaintiff sets forth contradictory allegations as outlined above. Plaintiff will be given an opportunity to amend his complaint to clarify his allegations.

### B. <u>Miranda</u> Warning

The Fifth Amendment provides: "No person ... shall be compelled in any criminal case to be a witness against himself...." This right against self-incrimination was addressed by the United States Supreme Court in <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), when it held:

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of any attorney, either retained or appointed.

<u>Miranda</u>, 384 U.S. at 444.

Since <u>Miranda</u>, this principle has been frequently reaffirmed. The Supreme Court itself stated:

> The purposes of the safeguards prescribed by Miranda are to ensure that the police do not coerce or trick captive suspects into confessing, to relieve the 'inherently compelling pressures'

---

[3] Plaintiff also seems to argue that Officer Shouse was operating under a mistake of law, which is crucial to determining whether reasonable suspicion exists to effect a traffic stop. However, unlike the cases plaintiff cites, Officer Shouse was not operating under a mistake of law. If any mistake was made on the part of Officer Shouse, it was a mistake of fact, not law. A factual belief that is mistaken, but held reasonable and in good faith, can provide reasonable suspicion for a traffic stop. See <u>United States v. Twilley</u>, 222 F.3d 1092, 1096 (9th Cir. 2000).

> generated by the custodial setting itself, 'which work to undermine the individual's will to resist,' and as much as possible, to free courts from the task of scrutinizing individual cases to try to determine, after the fact, whether particular confessions were voluntary.

Berkemer v. McCarty, 468 U.S. 420, 433 (1964) (quoting Minnesota v. Murphy, 465 U.S. 420, 430 (1984), Miranda v. Arizona, 384 U.S. 436, 445-58, 467 (1966)).

The issue in this case is whether questioning during a traffic stop is considered custodial interrogation. The Supreme Court has addressed this issue as well. While finding that a traffic stop significantly curtails the freedom of action of the driver when a vehicle is detained, "the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in Miranda itself and in the subsequent cases in which we have applied Miranda." Berkemer, 468 U.S. at 436-39. In fact, the Court found "the usual traffic stop is more analogous to a so-called 'Terry stop,' than to a formal arrest." Id. at 439 (citing Terry v. Ohio, 392 U.S. 1 (1968)). Under a Terry stop, an officer "may ask the detainee a moderate number of questions ... [b]ut the detainee is not obligated to respond." Id. Because the detentions in a Terry stop are comparatively nonthreatening, detainees are not subject to the required Miranda warning. Id. at 440. "The similarly noncoercive aspect of ordinary traffic stops" lead the Court to "hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." Id.

This is not to say that a traffic stop could never require Miranda warnings. Once a motorist is formally arrested or is "subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Id. (citing California v. Beheler, 463 U.S. 1121, 1125 (1983); Oregon v. Mathiason, 429 U.S. 492, 495 (1977)).

In this case, plaintiff was subject to an ordinary traffic stop in which the officer conducted a brief questioning of plaintiff. There is no indication that the amount of time plaintiff was detained was extended or that plaintiff was subjected to anything other than a moderate

number of questions.  Although plaintiff was issued a citation, he was not formally arrested and was not subjected to the treatment which would have rendered him in custody for practical purposes.  See United States v. Sharpe, 470 U.S. 675 (1985) (discussing the length of detention in turning a Terry stop into de facto arrest).  Therefore, the officer initiating the traffic stop was not required to advise plaintiff of his Miranda rights, and the failure of the officer to so advise plaintiff was not a violation of plaintiff's Fifth Amendment rights.

It does not appear that the deficiencies identified above can be cured through amendment.

**C. Invasion of Privacy**

The Fourth Amendment's right to privacy protects individuals where there is a justifiable, reasonable or legitimate expectation of privacy that has been invaded by government action.  See United States v. Knotts, 460 U.S. 276, 280-81 (1983).

> "One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects.  A car has little capacity for escaping public scrutiny.  It travels public thoroughfares where both its occupants and its contents are in plain view."  A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.  When [a driver] travel[s] over the public streets he voluntarily convey[s] to anyone who want[s] to look the fact that he [is] traveling over particular roads in a particular direction

including the stops he makes and his final destination.  Knotts, 460 U.S. at 281-82 (quoting Cardwell v. Lewis, 417 U.S. 583, 590 (1974)).

Petitioner alleges that his right to privacy, protected by the Fourth Amendment, was violated by the officers maintaining a list of vehicles frequently seen in northern California without California registration.  However, plaintiff fails to show how maintaining a list of vehicles operated on public highways within the state of California has violated his right to privacy.  The Supreme Court has stated there is no reasonable expectation of privacy while traveling on public streets.  As discussed above, California law requires vehicles based in

1  California or primarily used on California highways to be registered with the state of California.
2  See Cal. Veh. Code §4000.4.  If law enforcement is not able to keep track of vehicles frequently
3  seen in California, using California highways, they would not be able to enforce that law.
4        It does not appear that the deficiencies identified above can be cured through
5  amendment.

### D. Retaliation

7        The First Amendment protects the right "to petition the Government for a redress
8  of grievances."  It also protects the right of access to the courts.  See Lewis v. Casey, 518 U.S.
9  343 (1996).  "The right of access to the courts and to petition the government includes the right
10 to be free from retaliation for the exercise of such right."  Berrios v. State Univ., – F. Supp. 2d –,
11 2007 WL 2991461 (E.D.N.Y 2007).  In order to show retaliation in violation of the First
12 Amendment, a plaintiff must show that a government official took action that would chill or
13 silence a person of ordinary firmness from future First Amendment activities.  See Skoog v.
14 County of Clackamas, 469 F.3d 1221 (9th Cir. 2006); Mendocino Envtl. Ctr. v. Mendocino
15 County, 192 F.3d 1283, 1300 (9th Cir. 1999).
16       Plaintiff's claim of retaliation is not clear.  He appears to claim that he was issued
17 a citation for violation of California Vehicle Code § 4000(a) in retaliation for obtaining a
18 dismissal of a prior citation.  However, there is nothing in plaintiff's complaint to indicate that
19 any action on behalf of the officers named in his complaint, or any other government official, has
20 had a chilling effect on his First Amendment activities.
21       It does not appear that the deficiencies identified above can be cured through
22 amendment.
23 / / /
24 / / /
25 / / /
26 / / /

### III. CONCLUSION

Based on the above, plaintiff's complaint fails to state a cause of action upon which relief can be granted. Accordingly, the plaintiff's complaint will be dismissed. However, because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Specifically, plaintiff's Fourth Amendment search and seizure claim might be cognizable upon facts plead in an amended complaint. Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local Rule 15-220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980), *abrogated on other grounds by* Elwood v. Drescher, 456 F.3d 946 (9th Cir. 2006). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 11-110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint, filed on July 26, 2007, is dismissed with leave to amend; and

2. Plaintiff shall file a first amended complaint within 30 days of the date of service of this order.

DATED: November 29, 2007

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE