IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER T. HARRELL, | No. CIV S-07-1514-MCE-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| CALIFORNIA HIGHWAY PATROL, et al., | |
| Defendants. | |
| _____ / | |

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's first amended complaint (Doc. 6), filed on December 7, 2007.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court is also required to screen complaints brought by litigants who have been granted leave to proceed in forma pauperis. See 28 U.S.C. § 1915(e)(2). Because plaintiff, who is not a prisoner, has been granted leave to proceed in forma pauperis, the court will screen the complaint pursuant to § 1915(e)(2).

///

Under these screening provisions, the court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. BACKGROUND

Plaintiff alleges the California Highway Patrol (CHP) and three of its officers have violated his First, Fourth, Fifth and Fourteenth Amendment rights. The basis for his claims arises from a traffic stop initiated by Officer Shouse on September 2, 2006, while plaintiff was proceeding southbound on Interstate 5 in Siskiyou County, California. Plaintiff alleges Officer Shouse did not have reasonable suspicion and/or probable cause to initiate the traffic stop, a violation of his Fourth Amendment right against unreasonable searches and seizures, and that Officer Shouse violated of his Fifth Amendment rights by failing to advise plaintiff of his Miranda[1] rights. In addition, plaintiff alleges the CHP, Officer Roberts, Captain Lopey, and Officer Shouse violated his right to privacy by maintaining a list of vehicles frequently operated

---

[1] See Miranda v. Arizona, 384 U.S. 436 (1966).

in northern California which are licensed in Oregon, and retaliated against plaintiff for obtaining a dismissal of a prior citation for violation of the California Vehicle Code.[2]

   Plaintiff's original complaint, which named the same defendants and raised the same claims as this amended complaint, was dismissed at screening for failing to state a claim. The undersigned found that plaintiff's Fifth Amendment <u>Miranda</u> claim, Fourth Amendment invasion of privacy claim, and First Amendment retaliation claims were not cognizable. However, plaintiff was allowed an opportunity to cure his Fourth Amendment search and seizure claims, which was also deficient.   In an apparent attempt to cure the defects in his original complaint, plaintiff filed this first amended complaint and restated all of his claims.  Plaintiff's Fourth Amendment search and seizure claims and First Amendment retaliation claims are addressed in a separate order.  The remaining claims are addressed below.

## II. DISCUSSION

### A. <u>Miranda</u> Warning

The Fifth Amendment provides: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."  This right against self-incrimination was addressed by the United States Supreme Court in <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), when it held:

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.  By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required.  Prior to any questioning,

---

[2] Plaintiff also alleges several state law claims, which this court need not address at this time.

3

> the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of any attorney, either retained or appointed.

Miranda, 384 U.S. at 444.

Since Miranda, this principle has been frequently reaffirmed. The Supreme Court itself stated:

> The purposes of the safeguards prescribed by Miranda are to ensure that the police do not coerce or trick captive suspects into confessing, to relieve the 'inherently compelling pressures' generated by the custodial setting itself, 'which work to undermine the individual's will to resist,' and as much as possible, to free courts from the task of scrutinizing individual cases to try to determine, after the fact, whether particular confessions were voluntary.

Berkemer v. McCarty, 468 U.S. 420, 433 (1964) (quoting Minnesota v. Murphy, 465 U.S. 420, 430 (1984), Miranda v. Arizona, 384 U.S. 436, 445-58, 467 (1966)).

The issue in this case is whether questioning during a traffic stop is considered custodial interrogation. The Supreme Court has addressed this issue as well. While finding that a traffic stop significantly curtails the freedom of action of the driver when a vehicle is detained, "the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in Miranda itself and in the subsequent cases in which we have applied Miranda." Berkemer, 468 U.S. at 436-39. In fact, the Court found "the usual traffic stop is more analogous to a so-called 'Terry stop,' than to a formal arrest." Id. at 439 (citing Terry v. Ohio, 392 U.S. 1 (1968)). Under a Terry stop, an officer "may ask the detainee a moderate number of questions . . . [b]ut the detainee is not obligated to respond." Id. Because the detentions in a Terry stop are comparatively nonthreatening, detainees are not subject to the required Miranda warning. Id. at 440. "The similarly noncoercive aspect of ordinary traffic stops" lead the Court to "hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." Id.

///

This is not to say that a traffic stop could never require <u>Miranda</u> warnings. Once a motorist is formally arrested or is "subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." <u>Id.</u> (citing <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983); <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977)).

In this case, plaintiff was subject to an ordinary traffic stop in which the officer conducted a brief questioning of plaintiff. Plaintiff indicates that he was detained for "an unreasonable amount of time," but states that he was in fact detained for only about 15 minutes. During that 15 minute stop, defendant Shouse reviewed plaintiff's driver's license, registration and insurance. He also purportedly spoke on the telephone to defendant Roberts several times. Finally, he also asked plaintiff questions regarding his registration and issued plaintiff a citation. All of this was conducted in a span of 15 minutes. Plaintiff does not allege that defendant spent the entire 15 minutes questioning him. There is no indication that the amount of time plaintiff was detained was extended or that plaintiff was subjected to anything other than a moderate number of questions. Although plaintiff was issued a citation, he was not formally arrested and was not subjected to the treatment which would have rendered him in custody for practical purposes. See <u>United States v. Sharpe</u>, 470 U.S. 675 (1985) (discussing the length of detention in turning a Terry stop into de facto arrest). Therefore, the officer initiating the traffic stop was not required to advise plaintiff of his <u>Miranda</u> rights, and the failure of the officer to so advise plaintiff was not a violation of plaintiff's Fifth Amendment rights.

This claim should be dismissed because it does not appear that the deficiencies can be cured through amendment.

### B. Invasion of Privacy

The Fourth Amendment's right to privacy protects individuals where there is a justifiable, reasonable or legitimate expectation of privacy that has been invaded by government action. See <u>United States v. Knotts</u>, 460 U.S. 276, 280-81 (1983).

> "One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view." A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another. When [a driver] travel[s] over the public streets he voluntarily convey[s] to anyone who want[s] to look the fact that he [is] traveling over particular roads in a particular direction

including the stops he makes and his final destination. <u>Knotts</u>, 460 U.S. at 281-82 (quoting <u>Cardwell v. Lewis</u>, 417 U.S. 583, 590 (1974)).

Plaintiff alleges that his right to privacy, protected by the Fourth Amendment, was violated by the officers maintaining a list of vehicles frequently seen in northern California without California registration. However, plaintiff fails to show how maintaining a list of vehicles operated on public highways within the state of California has violated his right to privacy. The Supreme Court has stated there is no reasonable expectation of privacy while traveling on public streets. California law requires vehicles based in California or primarily used on California highways to be registered with the state of California. <u>See</u> Cal. Veh. Code §4000.4. If law enforcement is not able to keep track of vehicles frequently seen in California, using California highways, they would not be able to enforce that law.

This claim should be dismissed because it does not appear that the deficiencies can be cured through amendment.

The only allegations relating to defendant Roberts are his actions in maintaining the lists. Officer Roberts was not personally present during plaintiff's traffic stop and was not personally involved in any potential claim he might have for a violation of his Fourth Amendment rights against unreasonable searches and seizures, as addressed separately. Therefore, as plaintiff cannot state a claim for Officer Roberts actions in maintaining the list, and no other claims have been made against Officer Roberts, Officer Roberts should be dismissed from this action.

### C.  Supervisory Liability

Plaintiff attempts to state a Fourth Amendment violation claim against Captain Lopey on the basis of his failure to properly train and supervise the officers under his direction. Plaintiff does not allege any affirmative action on behalf of Captain Lopey, only vague and conclusory allegations that Captain Lopey "assisted and conspired with [Officers Roberts and Shouse] to obstruct justice, and to deprive Plaintiff of his constitutional rights."

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations, or had actual knowledge of the violations and failed to act to prevent them. See id. When a defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Therefore, plaintiff has not stated a claim against Captain Lopey, and Captain Lopey should be dismissed from this action.

### D.  Municipal Liability

Plaintiff also attempts to state a claim against the CHP for its policy, custom, and/or common practice of maintaining a list of vehicles with Oregon plates.

Municipalities and other local government units are among those "persons" to whom § 1983 liability applies. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Counties and municipal government officials are also "persons" for purposes of § 1983. See id. at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989). A local government unit, however, may not be held responsible for the acts of its employees or officials under a respondeat superior theory of liability. See Bd. of County Comm'rs v. Brown, 520 U.S.

1  397, 403 (1997). Thus, municipal liability must rest on the actions of the municipality, and not
2  of the actions of its employees or officers. See id. To assert municipal liability, therefore, the
3  plaintiff must allege that the constitutional deprivation complained of resulted from a policy or
4  custom of the municipality. See id. A claim of municipal liability under § 1983 is sufficient to
5  withstand dismissal even if it is based on nothing more than bare allegations that an individual
6  defendant's conduct conformed to official policy, custom, or practice. See Karim-Panahi v. Los
7  Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988).

8  Plaintiff's claim against the CHP arises in the context of maintaining this list
9  which plaintiff claims his name or vehicle is listed. He claims that it is the CHP's custom and
10 policy to maintain the list, which violates his constitutional rights. However, as discussed above,
11 no constitutional rights are violated by the CHP or its officers in maintaining a list of vehicles
12 known to the officers to be operated frequently in California with license plates and registration
13 documents from another state. As there is no violation, plaintiff is unable to state a claim against
14 the CHP, and the CHP should be dismissed from this action.

### III.  CONCLUSION

16  Based on the above, plaintiff's complaint fails to state a claim for violation of his
17 Fifth Amendment rights for failing to advise him of his Miranda rights, and violation of his
18 Fourth Amendment right to privacy. In addition, plaintiff fails to allege facts sufficient to state a
19 claim against defendants Roberts, Lopey, and the CHP. Because it does not appear possible that
20 the deficiencies identified herein can be cured by amending the complaint, plaintiff is not entitled
21 to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122,
22 1126, 1131 (9th Cir. 2000) (en banc).

23  Based on the foregoing, the undersigned recommends that plaintiff's Fourth
24 Amendment invasion of privacy claim and Fifth Amendment failure to advise claim should be
25 dismissed. In addition, the undersigned recommends that defendants Roberts, Lopey, and the
26 CHP should be dismissed. This case should proceed on plaintiff's First Amendment retaliation

claim and Fourth Amendment search and seizure claim as against defendant Shouse only, as addressed by separate order.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 26, 2008

                                    /s/ Craig M. Kellison
                                  **CRAIG M. KELLISON**
                                  UNITED STATES MAGISTRATE JUDGE